EXHIBIT 1

STATE OF SOUTH CAROLINA      ) IN THE COURT OF COMMON PLEAS
                                     ) FIFTEENTH JUDICIAL CIRCUIT
COUNTY OF HORRY                  ) CASE NO. 08-CP-26-7815

|  |  |  |
|---|---|---|
| William W. O'Day <br> and <br> Carol E. O'Day, | ) <br> ) <br> ) <br> ) |  |
| Plaintiffs, <br> vs. | ) <br> ) <br> ) | **AFFIDAVIT OF** <br> **TOM LEATH** |
| City of Myrtle Beach, | ) <br> ) |  |
| Defendant. | ) <br> ) |  |

Personally appeared before me Tom Leath, who being duly sworn, stated the following:

1. He is the City Manager for the City of Myrtle Beach and he has personal knowledge of the matters stated herein.

2. The City of Myrtle Beach is under the council manager form of government. As City Manager he is the Chief Executive Officer and Chief Administrative Officer of the City. All department heads in the City report to him. He is responsible for the administration and enforcement of ordinances in the City including the ordinances, which are the subject of the above captioned lawsuit.

3. He has first hand knowledge of the development of Myrtle Beach over a last twenty five years and he has first hand knowledge of the City's comprehensive plans for the future of Myrtle Beach.

4. The City of Myrtle Beach has conducted numerous public hearings, planning studies, and public meetings in connection with its citizens' public welfare, health, security, morality, and safety.

5. At those public meetings a substantial number of residents of the City of Myrtle Beach have complained about the excessive noise, traffic congestion and unruly

1

behavior that occur during the motorcycle rallies in the fall and the month of May.

6. Members of the medical community have warned about the overwhelming, dilatory effect of motorcycle injuries on the delivery of health care and medical resources within the City of Myrtle Beach when large groups of motorcyclists come into the City of Myrtle Beach.

7. He has personally witnessed the growth of motorcycle rallies and events in and around the City of Myrtle Beach over the years.

8. Based on his personal observations and the statements of residents at public hearings he believes motorcycle rallies have become a public nuisance for the residents of Myrtle Beach.

9. The public nuisances are caused by excessive noise throughout the night and day; traffic congestion on the main roads of Myrtle Beach; and conduct from crowds of revelers that overwhelm the City's health, police, and government resources.

10. The City of Myrtle Beach has made numerous efforts to abate the public nuisance for several years.

11. The ordinances that are the subject of the above captioned lawsuit are continuation the City's efforts to handle the noise problems, health and safety problems caused by large numbers of motorcyclists who visit Myrtle Beach. Some of the ordinances in question were enacted recently and some were enacted in 2006.

12. Those ordinances take into consideration the unique characteristics of the City of Myrtle Beach and the unique characteristics of the public nuisances that

2

occur in the City.  They were created to abate public nuisances and protect the

welfare, peace and safety of the citizens, residents and visitors of the City of

Myrtle Beach.

TOM LEATH, City Manager
City of Myrtle Beach

Sworn to before me this _20th_
day of _November_ 2008

Notary Public for _S.C._
State of South Carolina
My Commission Expires: _____

My Commission Expires 12-10-20__

3